Good morning, Your Honor. May it please the Court, I'm Mike Bresnahan. I'm representing the appellant, Timothy Yazzie. As we go through this, I'm going to refer to the alleged victim as R.J. and her mother as Sandra to protect their identities. I'm going to, although there's a lot of ground to cover, I'm going to try to reserve three minutes for rebuttal. I'd like to start with the closure of the courtroom. My impression in looking at the case is that the trial judge did a number of things right when he was analyzing what to do in this case with respect to the closure. Mr. Mitchell, the trial attorney, did ask that the courtroom be closed. And my reading of the transcript is that the request was unqualified. There was a dialogue that went back and forth, and Mr. Mitchell didn't seem to back off his position. And so I'm arguing from that perspective. The things the court did right, I think the court did a proper Waller analysis, including the overriding interest finding, the no broader than necessary, or I should say analysis, I'm not sure I agree with the findings, reasonable alternatives analysis, and the necessity to make findings. He also incorporated into his analysis, and I think properly, the required analysis under 18 U.S.C. 3509E, where the court is asked to determine whether there is, whether closing the courtroom or not closing the courtroom would cause substantial psychological harm to the witness or, and it's an or, result in the child's inability to effectively communicate. And I think he alluded to this question of whether his, what he had proposed was a reasonable narrowly tailored to serve the interest that 3509E are designed to serve. And, and this is probably the wrinkle in this case, in this issue, the order was provisional. It wasn't unqualified. He did invite, he announced to people present in the courtroom, at least, that he was not opposed to the idea of allowing people to show up and ask to view the proceedings, provided they were able to give, to convince the judge that they had a direct interest in the case. What the court did wrong, in my opinion, is the court failed to undertake an adequate determination or, we'll say determination of, or fact-finding mission, as it were, to determine whether R.J. would in fact, would in fact be deterred from effectively testifying if the court remained open, and or whether she might suffer substantial psychological damage. If I understand your brief correctly, you're not arguing that that was required under 3509. Is that right? You're arguing that that's a constitutional requirement? Yes. Well, the substantial psychological damage is mentioned in 3509. The, to testify effectively, I think that's, I think that's mentioned in 3509, too. So I guess I'm arguing, yes, I'm arguing that it applies to both. So I didn't see any Supreme Court case indicating that there had to be, I think you were suggesting, some evidentiary hearing or expert testimony. I didn't see a Supreme Court case requiring that. So are you asking us to extend the law here? And if so, what would be the basis for that? Well, I'm not asking the Court to go beyond what Waller requires, and that is a sensible and reasonable determination based upon some sort of investigation into the then-current psyche of the child witness. I guess I look to 3509E on these specific findings with respect to effectively communicating and whether it might cause substantial psychological damage. But there, under the Constitution, there has to be an overriding interest. And I would concede that under the right circumstances, the psyche of the, and the vulnerability of the child witnesses is a, can be an overriding interest. So I'm not, I'm not arguing that that is. Are you saying that the district court clearly erred in its finding that there would be potential for psychological harm? I, well, I am. I'm saying they didn't, the judge didn't do enough to find out, to determine sensibly whether that would be the case. And I'm also saying that he, that there was a factual error and it was clear. And I base that upon the child's performance, actual performance in the courtroom. Now, I wasn't there. We have to rely on the transcript of the case. But I do cite two points along the way where the child was asked questions that really went to how the child was feeling and how the child was doing while being questioned. And the child answered in a way that would leave one with the impression that the child was doing just fine. Just so that I'm clear, are you arguing that there's a legal error that as a matter of law the district court was required to undertake further investigation, or are you arguing that in this case the district court clearly erred in its finding as to the, as to the child witness, as to R.J.? Well, a little of both, if that's possible, because I am, I am challenging the methodology employed. Looking at a seven-month-old videotape of this girl being questioned by somebody employed by the state, which I provided the court, and then relying on the prosecutor's avowal that the child was becoming increasingly anxious as the trial date arrived. My position is in order for the Court's decision to be constitutionally sound, the Court has to employ a reasonable methodology to get to, to establish the overriding interest. I don't think the methodology here was adequate, and nor do I feel that the Court's findings were proper either. Was it clear to the Court that the objection was that the methodology was not adequate, whatever you said? Well, on this record, how do we see that that's the objection, the basis for the objection? Well, at the district court level, Mr. Mitchell simply said, I want the courtroom open, period. He didn't back down from that. That, no doubt. And so whatever the Court was suggesting, short of leaving the courtroom entirely open, constituted that objection. And the Court did suggest some things, and did finally arrive at a solution in the Court's mind. But the solution was flawed. Well, the methodology was flawed, and I believe the outcome was erroneous. What I'm asking you is, when an argument is made on appeal, is it significant that that same argument was not presented to the Court at the time the objection was made? And you can say no. It's not significant. Well, I think it isn't given the nature of the objection at the district court level. I think he did everything he needed to do to cement his position in this case. And now I'm just talking about the errors the Court made in overriding or overruling his decision. Well, that's why I ask you the question. The difficulty is there is no ruling that the Court can never close the session. Correct. There's never been such a ruling. Right. So we have to then, I guess, decide, in this case, on this record, did the Court err in closing? Right. And in considering that, is it appropriate for us to consider the specific arguments that were made to the district court and clearly ignored because the Court closed the courtroom? But do we look to see what was brought to the Court's attention? Again, I think it boils down to whether Mr. Mitchell was clear in his objection at the district court level, and then the Court having proceeded from there, whether the Court made the proper findings, used the proper methodology to reach its conclusion. Mr. Mitchell, after the Court had made its decision, did not jump in and say, for these following reasons, I think the Court is wrong. Maybe that gets to your question a little bit. But I don't think he was required to do that after he had made his uncertainty. He was required to do it. I'm asking if he was required when he said, I want the courtroom open. I don't want it closed. And here are the reasons that I want it open. Or does he just – is it sufficient for him to do what was done on this record? I think he did give some reasons in the record. I don't have them laid out verbatim in front of me. He gave some reasons. He didn't go into – He just didn't make the arguments you're making now. Right. He did not make – he did not make elaborate legal arguments at the time. And I think I acknowledged that in my brief. Counsel, you – I think you said in your brief and you raised here, well, when she did testify, it looked like she was doing a pretty good job and was relaxed enough. Is that – how do we – are we supposed to take that into account? In the midst of her testimony, should the judge have stopped and said, whoops, it looks like she's doing okay after all. I guess we'll open the courtroom. Is that your point? Or is it your point that somehow if she managed to keep things together with the courtroom closed, she kept – she managed to hold things together, that demonstrates a judge is wrong in thinking the courtroom should be closed. Is that your point? I'm not trying to – I'm trying to figure out what the point is about the testimony she did give. Well, to be sure, nobody showed up. So she was not testifying in the presence of family members, the press, or the public other court staff. And let's assume – and let's assume the moment she held it all together and did just fine. Right. What is that supposed to tell us? I mean, you've made a point of it a couple times, and I guess to put it more grossly, so what? Right. Well, inferentially – and I can't say for sure how she would have performed with – in a crowded courtroom or in a courtroom with particular people in it that might be family members. Or even whether the courtroom would have been crowded had it been open. We don't know. Or – that's correct. We don't know. But my question is a little different. My question is really is so what? Let's say it turns out she did a wonderful job, and? Well, I think that's evidence that the child was not so fragile around the time that she testified. And the judge would have figured this out had the judge taken her in camera and talked to her, had the judge had a psychologist talk to her, a guardian ad litem talk to her. Somebody, some neutral party talked to her. They probably would have determined before she testified that she was going to testify in the manner she did. If I understand you right, you're saying if we determined that the district court erred at the time, then that error wasn't harmless because you're inferring that she could have testified appropriately. But I'm still stuck on the first point, which is what tells me that the district court made an error, especially a clear error, in determining that the courtroom had to be closed? Well. At the time, based on the information he had before him. I look at that two ways. The first way I look at that is to say we have no idea. Because the judge didn't undertake a proper investigation of her psyche. Okay. So you are saying as a matter of law, the district court erred in not doing additional investigation beyond reviewing the videotape. Yes. Yes. I think that's a fair argument, along with the argument that his findings were, his findings that she was too vulnerable to testify without her sustaining psychological damage and so forth, was clear error. I believe that that was clear error. So there are a number of things the judge could have done, and I've talked about those in my brief. I don't want to cut you off, but you may want to save time. Right. And I've only gotten to the first issue, but I think I will save a couple of minutes. Thank you. You have a minute and 45 seconds, actually. May it please the Court. My name is Karla Hodes-Delore, representing the government. The district court did not err in closing the courtroom during the victim's testimony. And as defense counsel has already stated, the court made the correct finding of there being a substantial reason. It narrowly tailored its closing of the courtroom, and it did consider the alternatives. The issue that defense counsel has is the one saying the court didn't do enough in making its determination. And the response to that question is that, first of all, defense counsel never objected to the court's methodology in undertaking this analysis and never requested that the court do more than it did. What the court did was sufficient, and case law nor the statute requires that the court did any more than it did in this case. Is that reasonable? Well, the district court looked at a seven-month-old video and, based on that, made a determination. How do we know that that's reasonable? I mean, the district court needs to have some basis for making its determination. Would you agree with that? Correct. And the court did. The court held the parties briefed the motions. The court held an oral argument on the motions. It reviewed the videotape. It was only seven months old. It's not so stale as the interview happened in April and the trial happened in November. So it was recent. And the court, in making its findings, said it determined the victim's age or maturity and our obvious discomfort in testifying to this. Now a defense counsel could have easily said and raised an objection saying to the court, I think you should do more than view just the videotape or listen to the government's avowals. I think we need to have a guardian ad litem appointed or something like that. But the defense attorney never raised those options to the court and seemed satisfied with the court's methodology in doing this. What difference would it have made if the defense had raised those alternatives and the district court just denied them? Well, I think that the... But what standard would we use for evaluating whether that was unreasonable or not? Are we looking at clear error or what are we looking at? I would think it would be a clear error standard. And the fact is then the judge here was very articulate in making its factual findings and it could have stated on the record why it found sufficient the methodology employed or why it wasn't sufficient to pursue other alternatives that the defendant might have suggested. But the government was willing to put on the forensic interviewer and the case agent as well to give the court further support and the court had said that it had heard enough. And I'd also like to bring to the court's attention that Judge Ferris had asked about the so what that the child testified seemingly without any problems. Actually, the record does show that the victim did have problems testifying in this case. And this is located at the excerpts of record, volume one, page 173. The victim was testifying. The prosecutor asked her what she was thinking when the defendant was on top of her engaging in sexual intercourse. And the victim testified that she stated that she shouldn't be doing this because her grandmother said she was still a little girl. The defense objected on grounds of hearsay. The court then held a sidebar with the attorneys and then the court said, quote, I'm going to give you reasonable leeway because the witness is obviously having a very difficult time and is very emotional. So the response is that the victim is belied by the statement during the testimony. Another example of the victim's discomfort testifying about the nature of what went on is, again, when the prosecutor was asking the victim about the pornography the defendant was showing her on the computer and the prosecutor asked the victim, what was the defendant showing you? What were the people doing that you saw on the computer? And the victim couldn't even say the word sex. She had to spell it out. She said, the people are doing S-E-X, and she commented that she just couldn't say that word. Now, unfortunately, that transcript is not in the excerpts of record, but it is, and I can provide it to the court if it would like. The date of the transcript is November 30, 2011, page 242. So those two instances do show that the victim was indeed upset about the testifying for this. Again, the position is the government did everything it needed to do in this case, made the substantial findings, narrowly tailored the closure of the courtroom, and considered all the reasonable alternatives. If the court has no other further questions on the closing of the courtroom, I can address the other issues if the court is so inclined. Go ahead. Okay. Just very briefly, the court did not abuse its discretion in admitting the other active evidence of the defendant regarding the pornography and the physical violence and threats that were involved. This evidence was inextricably intertwined with the offenses, and it also satisfied the 404B analysis. And furthermore, its probative value was not substantially outweighed by the danger of unfair prejudice. With respect to the limiting instruction that was given, the court did not err in giving the limiting instruction, nor if the court were to find any error did it rise to the level of plain error review. With regard to the limiting instruction, the only difficulty I see there is the limiting instruction given seems to be focused on violent other acts only. But there were other acts involved in this case, and by violent other acts that she knew about. But there were others involved in this case, other acts that weren't violent and or that she didn't know about. So the court didn't exactly give a other acts instruction regarding those. Are you saying that's not error or it's just harmless? Which are you saying? Or both? I'm saying both, actually. The instruction did not mislead the juror because it adequately instructed the jurors that the defendant was not charged with any crimes based on the other acts evidence, and then it limited the other acts evidence for the purpose of showing the effects of witnessing those acts had on the alleged victim. To the extent that this instruction did not cover all of the other acts, for instance, the fact that the defendant searched for pornography, the specific pornographic videos on his computer, or that he threatened the mother with a gun, threatened to shoot the mother with a gun if she did not allow him to have sex with her daughter. As far as those, that would be the fact that the instruction didn't specifically address those things would be harmless error, didn't arise to the level of plain error given the overwhelming evidence presented against the defendant in this case. Part of your answer I'm not getting to. The Court, if I'm reading this thing right, said as to other acts witnessed by the victim, all abuse of weapons, the defendant's not charged with crime based on them. But it seems to say, it doesn't say he's not charged with crimes based on the other acts. So it looks like the instruction's a little bit too limited. Right. Okay. I understand what you're – I'm sorry. I was not understanding your question, but I now understand it. Right. For example, there was stuff on – there was his calls to his mother. Oh, the calls – The right guy. Right, right. The calls to his mother. And it was his watching pornography by himself. Right. Correct. Those are other acts. They don't involve the victim. They don't involve something that she saw. But the Court doesn't say anything about those. Right. Well, first of all, the acts about the phone calls to the mothers, those were admissible under 801 as statements by the defendant. But the thing is, is the fact that the – even if it – well, let me just go straight to the – cut to the chase. Even if the Court were determined that that was error and that the instruction didn't cover everything regarding these other acts, the fact is that is harmless error in this case. And it doesn't – first of all, there was no objection to the instruction, so we're under a plain error review. And it doesn't rise to the level of plain error because given the victim, R.J.'s, testimony about the nonconsensual sexual acts the defendant performed on her, the defendant's own admission that he had been having sex with R.J. for eight months, and both R.J. and Sandra's testimony that the defendant wanted to have a baby with R.J. and neither R.J. nor her mother wanted that to happen. So if there was any error, it was harmless error in this case. And just briefly to quickly address the other two issues, the double jeopardy, there was different acts charged in Counts 2 and 3 regarding the sexual acts, and R.J. testified two separate sexual acts to support each conviction. Are you relying on the analysis in 2-ELK for this? Yes. Because we don't have a case that provides that analysis, is that right? That is correct. Are there any other circuits that have weighed in on this issue? I am not aware of any other circuits. I could double-check, but I only found the Eighth Circuit ELK case on that. Each offense requires a fact which the other does not. Count 2 specifically alleges that the sexual act was one which involved the contact between the defendant's penis and the victim's vulva, and Count 3 was the sexual act involved the intentional touching, not through the clothing of the victim's genitalia with the defendant's hand. So it's clearly two separate and distinct acts that were alleged, and there was testimony to support each of the distinct acts. And with regard, lastly, to the sleeping juror, it is the government's position that although the court did not articulate that Juror 10 had actually become Juror 9 once Juror 6 had been excused, the correct juror was selected as an alternate as evidenced by the fact that neither the prosecution nor the defense objected to the court determining that Juror 9 was the alternate juror because he had been sleeping. If the court does not have any further questions, we would ask that you affirm the defendant's convictions and sentences. All right. Thank you. Thank you. I'll go as quickly as I can here. Regarding the closure, again, the witness was asked in court how she felt. She claimed to be feeling happy. These are cites from my brief. When asked by the prosecutor whether it was hard for her, R.J., to talk about her alleged sexual encounters with Yazzie, this is an open court, she replied, not really. Again, I wasn't there, but that suggests that she wasn't as fragile as the court perhaps thought. And I stand by my argument. The court should have done a lot more to determine her true and current state of mind. Regarding the jury instruction, some incredibly incendiary evidence came in at this trial that had very questionable probity, but was incredibly damaging. Evidence that Yazzie had come upon one or more pornography sites, not just pornography sites, but sites involving sadistic sexual acts perpetrated by a father on a teenage daughter. No instruction given to tell the jury what to do with that. Evidence that Yazzie threatened to kill Sandra and her children if she didn't let R.J. have Yazzie's child. Very incendiary. No limiting instruction. Evidence that Yazzie was plotting while in jail awaiting trial to kill R.J. Now, I understand that that's a statement that might come in under as non-hearsay, but nevertheless, it's subject to the 403 analysis, and it's got to be relevant. And there was no relevance to anything in this case with respect to that statement, and the jury wasn't instructed in any way regarding what to do with it. Can you sum up? You're actually out of time now. Oh, I'm sorry. And that covers it then. Thank you very much. Thank you. All right. This case is submitted.
judges: Farris, Fernandez, Ikuta